## WRENN v. NEW ORLEANS CHAIR CO.
### No. 14308.

Court of Appeal of Louisiana. Orleans.
Dec. 19, 1932.

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, for appellant.

Brian & Brian, of New Orleans, for appellee.

HIGGINS, J.

This is a suit by a manufacturer of furniture against a wholesale furniture dealer to recover the sum of $1,500, alleged to be due for fifty bedroom suites at $30 each, which were sold and delivered on June 18, 1931. The defendant admits the sale, price, terms, and delivery of the merchandise, but asks for a diminution in the price because of alleged

redhibitory vices and defects, and in reconvention claims damages said to have been sustained as a result of a breach of the contract by the plaintiff.

There was judgment in favor of the plaintiff as prayed for, and defendant has appealed.

The evidence shows that the plaintiff is engaged in the business of manufacturing furniture at High Point, N. C., and that the defendant is a wholesale furniture dealer in New Orleans. On June 5, 1931, a salesman for the plaintiff took an order from the president of the defendant company at the Chicago Furniture Market, where a sample of the bedroom suite was on display. The order was forwarded to the factory on June 11th, and the merchandise crated, packed in box cars and shipped to New Orleans on June 18, 1931, on a ninety-day credit basis. On October 1, 1931, plaintiff wrote defendant calling attention to the fact that the account was delinquent since September 18th, and requested a remittance. The defendant failed to respond to this letter, and, on October 31st, another written demand was made by plaintiff. The defendant then wrote plaintiff that it still had on hand twenty-eight of the bedroom suites and, upon uncrating six of them, very few of the pieces were found to be free from defects. In this letter defendant also demanded a reduction in the price, which plaintiff refused to grant, with the result that the matter was placed in the hands of an attorney, and, after certain correspondence, this suit was filed on February 1, 1932.

The defendant concedes that it bore the burden of establishing that the furniture was defective and not in conformity, both as to workmanship and material, with the sample submitted. McCarroll Lumber Co. v. Patenotte, 162 La. 99, 110 So. 102. But defendant contends that it has successfully borne that burden. On the other hand, the plaintiff argues that defendant's evidence is a gross exaggeration of the condition of the furniture, and that its claim in reconvention for damages is remote and speculative.

The president of defendant company and his son testified that the suites of furniture delivered were not in accordance with the samples which they inspected on display at Chicago at the time the order was placed on June 5, 1931. Certain pieces of furniture were brought into the lower court, and the defects, consisting of certain saw marks on the vanity dressers, cracks and defects in the frames of the mirrors, defects in the mirrors on the vanity dressers, and a difference in the shade of color of the respective pieces of furniture, some being light and others dark, were pointed out to the trial judge. The superintendent and other salesmen of the company also testified that a great many pieces of the suites were defective and unsalable, and in about nine instances the customers had returned the suites because of their defective condition, particularly because pieces of the veneer had become unglued and peeled off.

Mr. Mintz, another New Orleans furniture dealer, who was also sued by the plaintiff for failing to accept delivery of another car of furniture, testified that the exhibits in court were different than the samples submitted at Chicago; the samples being of superior quality both as to material and workmanship.

The owner and proprietor of plaintiff company and the salesman, who took defendant's order and also superintended the packing and shipping of the furniture, testified by deposition that the merchandise shipped was in accordance with the sample submitted, and was manufactured from the same pattern with the same grade of gumwood and veneer and finished in the same rich walnut color. They further state that the defendant only made a vague complaint as to the defective condition of the furniture after the account was delinquent and two letters requesting payment had been mailed to it.

The suites consisted of four pieces, a French vanity, dresser, mansrobe and double bed, and were delivered and sold for the price of $30 per suite. At the time of the trial on May 9, 1932, defendant had sold all except twenty-one of the suites of furniture which were retained in their warehouse, still crated and uninspected. The defects which the defendant's employees and officers point out are unquestionably patent, except the subsequent peeling off of pieces of the veneer, unless it can be said that, because these articles were crated and packed in excelsior, the defendant was excused from examining them within a reasonable time after their delivery. But the defendant's evidence shows that a number of these suites were unpacked for the purpose of delivering them to customers, and, if all of the alleged apparent defects existed, then it would seem, to the court that defendant would certainly not have sold its customers twenty-nine defective suites of furniture. None of the alleged complaining customers testified for the defendant.

Another inconsistency in the defendant's position is that in its answer it avers that the defects were latent and not discovered until seven months after delivery, but the testimony of its witnesses is to the effect that the defendant had written to the plaintiff in August, 1931, complaining of the defects.

The trial judge who heard and saw the defendant's witnesses, in his written reasons for judgment, characterizes their testimony as "uncertain, vague, and unsatisfactory." We have carefully reviewed the record, and feel that the judgment is correct.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.