WATSON, Judge.
Plaintiff, Sam’s Diesel Repair Service, Inc., has appealed from a trial court judgment dismissing its suit, which claimed damages of $1300 for the total deterioration in value of a certain “Attex Swamp Buggy”. The deterioraton allegedly resulted from defendant, William E. Davis, refusing to surrender the swamp buggy to Sam’s.
Sam’s sold Davis the Attex swamp buggy at its place of business in Opelousas around November 2, 1970. Davis filed a redhibito-ry action. Judgment was rendered November 26, 1973, ordering rescission of the sale and refund to Davis of the purchase price, $1300. The judgment was paid on May 24, 1974, by a check for $1,473, which included interest but not court costs. The court costs were still unpaid at the time of this second trial. Prior to the time the judgment was paid, Davis had the buggy transported back to Opelousas from Baton Rouge by Audrey Matthews. It was partially dismantled because of repair work attempted at Anchor Marine in Baton Rouge before the rescission of the sale. Anchor Marine has an authorized repair service for Attex swamp buggies. Davis testified that Anchor Marine would not repair the buggy because it was not a new unit and not in warranty, although sold to Davis as new. Anchor Marine wanted $500 to put the buggy in running condition and Davis declined to pay, tendering the buggy to Sam’s as returned to him by Anchor Marine. After Sam’s refusal to accept the buggy in Opel- *1310 ousas, Davis kept it in Baton Rouge until January of 1975, when it was placed in storage with Ivan E. Carter. Davis testified that he had never used the buggy after its initial breakdown and had purchased a substitute vehicle. Carter said that it had been stored with him in Baton Rouge from January 4, 1975, until this trial on September 30, 1976, or 635 days, for which the charge was $1 a day. Davis reconvened for these charges, but the trial court dismissed the reconvention without prejudice, leaving this dispute to be settled between Sam’s and Carter. No appeal has been taken from this portion of the judgment, which is now final.
Davis’ attorney advised the attorney for Sam’s by letter dated June 7,1974, that the swamp buggy could be picked up at Davis’ place of business on Choctaw Drive in Baton Rouge. Davis said that the swamp buggy was there until January of 1975 when he closed his business and placed the vehicle with Carter. In June of 1974, Blake Fontenot was going to Baton Rouge to get parts for Sam’s and was asked to stop by Davis’ house to pick up the swamp buggy. Fontenot went to the Davis residence on Chippewa Street but there was no answer at the house. A second trip to Chippewa Street was made in July of 1974. Again, Mr. Davis was not there, but he had not been contacted before either trip.
Davis testified that in June of 1974 he was in Ocshner Clinic in New Orleans and in July he was probably at his shop. Davis denied ever having refused to turn over the swamp buggy and said the only time he was told that someone was coming to pick it up, he waited two hours at his home but no one came.
The only real issue on appeal is whether Sam’s is entitled to damages because the buggy was not tendered in the same condition it was when purchased.
The trial court correctly found that Davis has never refused to surrender the swamp buggy; that he made a good faith attempt to deliver it in Opelousas; and that the condition of the buggy at that time resulted from its original defects. The trial court relied on a strong analogy to LSA-C.C. art. 2532 in concluding that Sam’s Diesel Service was not justified in refusing to accept the buggy. LSA-C.C. art. 2532 states:
“If the thing affected with the vices has perished through the badness of its quality, the seller must sustain the loss.”
This article is pertinent, since the condition of the buggy at the time Davis tendered it to Sam’s resulted from defects existing at the time of the sale. The trial court stated that the subsequent failure of Sam’s to obtain the swamp buggy resulted merely from misunderstanding since Sam’s employees attempted to pick it up at Davis’ residence on Chippewa when they had been advised that it could be picked up at his place of business on Choctaw. We agree.
The attorney for Sam’s contends that his client is entitled to be returned to the status quo, which requires compensation for depreciation of the swamp buggy, citing Dougherty v. Petrere, 240 La. 287, 123 So.2d 60 (1960) and other cases stating that redhibition is not available when property cannot be returned to the seller in substantially the same condition as it was when sold. However, we are not dealing with an action in redhibition since that was granted nearly four years ago. In Dougherty, the Louisiana Supreme Court found that the one seeking redhibition had made tender of the defective article and was not responsible for its deteriorated condition at the time of trial. That is exactly the case here. There is no evidence that Davis used the swamp buggy or in any way profited from its possession after the sale. His testimony was that it had been an inconvenience to him and that he purchased another vehicle. Tender was made, redhibition was ordered, and the subsequent deterioration of the swamp buggy is due as much to laches on the part of Sam’s as to any fault on the part of Davis.
For the foregoing reasons, the judgment of the trial court herein is affirmed at the cost of plaintiff-appellant, Sam’s Diesel Repair Service, Inc.
AFFIRMED.